Jeremy B. Jones, Alaska Bar No. 1711074
NICOLL BLACK & FEIG PLLC
1325 Fourth Avenue, Suite 1650
Seattle, WA 98101
Tel: (206) 838-7555
Fax: (206) 838-7515
jjones@nicollblack.com
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA

| | |
|---|---|
| CLINTON HODGES and GERRI HODGES,<br><br>    Plaintiffs,<br><br>  v.<br><br>SEWARD SHIP'S ACE HARDWARE & MARINE,<br><br>    Defendant. | IN ADMIRALTY<br><br>**NO.**<br><br>**COMPLAINT** |

### **INTRODUCTION**

1. This action arises out of damages sustained by the sailing vessel HORIZONS while stored in Defendant's boatyard. The vessel fell from its supports, which were improperly placed and maintained by Defendant. As explained below, Defendant's actions and/or omissions constitute breach of a variety of maritime contact and maritime tort duties, which proximately caused the damages alleged herein.

### **JURISDICTION AND VENUE**

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1333 because the causes of action asserted herein fall within the Court's admiralty and maritime jurisdiction.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because the defendant resides in the District of Alaska. In addition, venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to plaintiffs' claims occurred in the District of Alaska.

## THE PARTIES

4. Plaintiffs Clinton and Gerri Hodges are a married couple residing in Anchorage, Alaska. The Hodges were owners of the vessel HORIZONS, a Southern Cross 39-foot sailboat.

5. Seward Ship's Ace Hardware & Marine is an Alaska corporation or other business entity residing in Seward, Alaska. Seward Ship's Ace Hardware & Marine is involved in, among other business activities, the servicing of recreational vessels, including but not limited to providing blocking and storage services for such vessels.

## FACTS

6. As explained above, the Hodges owned the vessel HORIZONS. The Hodges had purchased the vessel with the intent of spending their retirement sailing and otherwise enjoying the vessel.

7. On or about September 6, 2017, the Hodges retained Seward Ship's Ace Hardware & Marine to securely block (the term "block" in this context is intended to refer to the placing of supports and other materials to secure the vessel in an upright position while stored on dry land) and store the vessel at its facility.

8. HORIZONS was subsequently hauled out and transported to Seward Ship's Ace Hardware & Marine's facility. Seward Ship's Ace Hardware & Marine's personnel then placed blocks and stands intended to support the vessel in an upright position while on dry land.

9. Seward Ship's Ace Hardware & Marine's personnel were in sole control of the blocking operation, and made all decisions regarding where to position the vessel in Seward Ship's Ace Hardware & Marine's storage yard, how many stands to use, where to place those stands, and so on. All stands, blocks, and other equipment and materials used to block the vessel

were provided by Seward Ship's Ace Hardware & Marine, and all of these items were installed by Seward Ship's Ace Hardware & Marine's personnel.

10. Pursuant to the standards promulgated by the American Boat and Yacht Council ("ABYC"), the stands utilized to support HORIZONS should have been placed no more than 10 feet apart on centers, with the forward-most and after-most pairs of stands no more than 10 feet from the ends of the waterline. The ABYC standards note that vessels stored with stepped masts are more at risk, and additional support may be required. Pursuant to these same ABYC standards, each pair of stands should have been secured across the vessel to prevent lateral movement. In addition, these standards suggest that on soft ground, extra, rigid pads, such as plywood, may be required under the stands to prevent them from sinking into the ground.

11. HORIZONS was 39 feet long, and was to be stored with its mast stepped, in a location with soft ground. ABYC standards therefore required a minimum of three pairs of stands per side, with additional pairs of stands recommended. Each pair of stands should have been secured across the boat to prevent lateral movement. Rigid pads should have been placed under the stands to prevent them from sinking into the soft ground.

12. Seward Ship's Ace Hardware & Marine's personnel elected not to follow ABYC standards when placing supports to secure HORIZONS for storage. Only two stands per side were used. Although the stands utilized were designed to be chained together across the vessel to prevent lateral movement, Seward Ship's Ace Hardware & Marine's personnel did not utilize the chains, and no other efforts were made to secure the stands against lateral movement. Although the ground was quite soft in the area where the vessel was stored, no rigid pads were placed under the stands to prevent them from sinking into the soft ground.

13. On or about December 11, 2017, while stored in Seward Ship's Ace Hardware & Marine's facility supported pursuant to the arrangements Seward Ship's Ace Hardware & Marine's personnel had made to secure the vessel in an upright position, HORIZONS toppled over and fell from her supports, sustaining significant damage.

NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
Phone: (206) 838-7555  Fax: (206) 838-7515

14. On or about December 23, 2017, HORIZONS was inspected. This inspection determined that as the result of the fall, the vessel's hull had been punctured and cracked, her fuel tank had been ruptured, numerous items in the interior of the vessel had been broken, and her mast had been displaced, among other damage. This inspection determined that the cost to repair the vessel would likely exceed $114,000, and could be far higher. Pursuant to this inspection, the vessel was declared a constructive total loss.

15. The December 23, 2017 inspection determined that the cause of the damage to HORIZONS was Seward Ship's Ace Hardware & Marine's improper and inadequate use and placement of stands, supports, and related measures to secure the vessel in an upright position.

## **FIRST CAUSE OF ACTION: BREACH OF CONTRACT**

16. Plaintiffs refer to and incorporate by reference as though fully set forth herein paragraphs 1 through 15 above.

17. Seward Ship's Ace Hardware & Marine agreed to block and store HORIZONS for seasonal storage in consideration of payment from the Hodges. This agreement constitutes a maritime contract.

18. The maritime contract between Seward Ship's Ace Hardware & Marine and the Hodges included an implied warranty of workmanlike performance.

19. Seward Ship's Ace Hardware & Marine failed to perform its obligations to block and store HORIZONS in a workmanlike manner. Seward Ship's Ace Hardware & Marine's failure to perform in a workmanlike manner includes, but is not limited to, the following acts and/or omissions: failing to use a sufficient number of stands to properly support HORIZONS, failing to secure pairs of stands across the vessel to prevent lateral movement of the stands, and failing to place rigid pads under the stands.

20. As the direct and proximate result of Seward Ship's Ace Hardware & Marine breach of its contract with the Hodges, the Hodges suffered damages in an amount to be proven at trial; at present, the damages sustained are believed to total approximately $127,000.

NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
Phone: (206) 838-7555 Fax: (206) 838-7515

## SECOND CAUSE OF ACTION: BREACH OF BAILMENT

21. Plaintiffs refer to and incorporate by reference as though fully set forth herein paragraphs 1 through 20 above.

22. Seward Ship's Ace Hardware & Marine entered into a contract of bailment with the Hodges when it accepted HORIZONS, in good order and condition, for storage.

23. Seward Ship's Ace Hardware & Marine breached its contract of bailment with the Hodges when it failed to return HORIZONS to the Hodges in the same good order and condition in which it was received.

24. As the direct and proximate result of Seward Ship's Ace Hardware & Marine's breach of its contract with the Hodges, the Hodges suffered damages in an amount to be proven at trial; at present, the damages sustained are believed to total approximately $127,000.

## THIRD CAUSE OF ACTION: NEGLIGENCE

25. Plaintiffs refer to and incorporate by reference as though fully set forth herein paragraphs 1 through 24 above.

26. Seward Ship's Ace Hardware & Marine owed the Hodges a duty of reasonable care under the circumstances when it undertook to block the HORIZONS and otherwise attempt to secure the vessel in an upright position for storage on dry land.

27. Seward Ship's Ace Hardware & Marine breached that duty by failing to exercise reasonable care when it undertook to block the HORIZONS and otherwise attempt to secure the vessel in an upright position for storage on dry land. The acts and/or omissions on the part of Seward Ship's Ace Hardware & Marine that constitute a breach of the duty to exercise reasonable care include, but are not limited to: failing to use a sufficient number of stands to properly support HORIZONS, failing to secure pairs of stands across the vessel to prevent lateral movement of the stands, and failing to place rigid pads under the stands.

28. As a direct and proximate result of Seward Ship's Ace Hardware & Marine's breach of its duty to exercise reasonable care as alleged above, the Hodges suffered damages in

an amount to be proven at trial; at present, the damages sustained are believed to total approximately $127,000.

**FOURTH CAUSE OF ACTION: GROSS NEGLIGENCE**

29. Plaintiffs refer to and incorporate by reference as though fully set forth herein paragraphs 1 through 28 above.

30. The acts and/or omissions of Seward Ship's Ace Hardware & Marine as set forth in the preceding paragraphs were willful, wanton, outrageous, grossly negligence and/or reckless.

31. Due to Seward Ship's Ace Hardware & Marine's willful, wanton, outrageous, grossly negligence and/or reckless conduct, Seward Ship's Ace Hardware & Marine is liable to the Hodges for punitive damages pursuant to the general maritime law.

**PRAYER FOR RELIEF**

Plaintiffs pray for judgment against Defendant as follows:

1. For actual damages in an amount for be proven at trial;
2. For punitive damages in an amount to be proven at trial;
3. For pre- and post-judgment interest in an amount allowed by law;
4. For attorney fees, costs, and disbursements incurred herein; and
5. For such other and further relief as the Court may deem just and equitable.

DATED this 1st day of March, 2019.

NICOLL BLACK & FEIG, PLLC


/s/ Jeremy B. Jones
Jeremy B. Jones, Alaska Bar No. 1711074
Attorneys for Plaintiffs

COMPLAINT PAGE 6 OF 6